UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
PALL CORPORATION,

                Plaintiff,

- against -

ENTEGRIS, INC., d.b.a.,
MYKROLIS CORPORATION,

                Defendant.
-----------------------------------------------------X

**MEMORANDUM & ORDER**

05-CV-5894 (RRM)(WDW)

MAUSKOPF, United States District Judge.

Defendant Entegris, Inc. objects to Magistrate Judge William D. Wall's May 23, 2008 Order (the "May 23rd Order") clarifying the terms and conditions of a September 15, 2006 protective order (the "Protective Order") entered into between Entegris and Plaintiff Pall Corp. [Docket entry 135]. Pall has interposed its opposition to the objections and seeks additionally to strike portions of Entegris' submissions as constituting an improper expansion of Entegris' unpreserved arguments. Upon a review of the record, this Court concludes that, for the reasons below, the May 23rd Order is neither clearly erroneous nor contrary to law. As such, Entegris' objections are DISMISSED and Pall's motion to strike is DENIED as moot.

**FACTUAL AND PROCEDURAL BACKGROUND**

Pall and Entegris are competitors in the development and manufacture of commercial filter technology. At issue in this litigation are infringement claims concerning two Pall patents: 6,174,439 (the "439 patent") and 5,510,026 (the "026 patent"). The main thrust of this dispute concerns so-called "wet filter" technology – filters requiring moisture to operate. Given the difficulty in applying moisture to, and maintaining that moisture in, the filter material, Pall

developed a means of delivering filters to consumers in a pre-wet state. It is Pall's position that certain Entegris products infringe its pre-wet filter patents and the 439 patent in particular.

Separate from the pre-wet filter dispute, Pall and Entegris are engaged in separate infringement litigation before this court concerning so-called "pleated filters" – filters with membranes arranged in a pleated formation to increase the filter's surface area. See Pall Corp. v. Entegris, Inc., No. 07-CV-1869(RRM)(ETB). In that action Entegris challenged the validity of Pall's pleated filter patents nos. 5,543,047 and 5,690,765, but moved to stay that action[1] in light of a pre-existing dispute between Pall and a third party, Cuno Incorporated ("Cuno"), concerning those very same pleated filter patents, which disputes are also pending before this Court. See Pall Corp. v. Cuno, Inc., 97-CV-7599(RRM)(ETB) and Pall Corp. v. Cuno, Inc.,03-CV-0092(RRM)(ETB).

In connection with the Pall/Cuno disputes pending before this Court, Cuno has commenced a patent reexamination proceeding, an extra-judicial, administrative proceeding before the United States Patent and Trademark Office, challenging the validity of Pall's pleated filter patents. Cuno's reexamination request is based in part upon two foreign patents which it claims constitute prior art, and which invalidate Pall's pleated filter patents. Pall's litigation counsel, Mr. Michael Hartmann of Leydig, Voit & Mayer, Ltd. ("LVM"), who has represented Pall in litigation with Cuno since 1997, views the Cuno-initiated reexamination as merely an extension of the parties' long-standing pleated filter litigation to another forum; he therefore intends to work with Pall's patent counsel to defend Pall against Cuno's invalidity claims in that proceeding.

---

[1] On September 25, 2008, this Court denied Entegris' motion to stay that proceeding.

Entegris, which is not a party to the reexamination proceeding, nonetheless objects to Hartmann's involvement in that proceeding. Entegris argues that in connection with its pre-wet filter dispute with Pall, it has produced a significant amount of "highly confidential," trade secret documents concerning not only its pre-wet filter products, but its pleated filter technology as well. While Entegris acknowledges that the current pre-wet filter dispute does not directly implicate pleated filter technology, Entegris claims that, over its objections, Judge Wall ordered them to produce such documents in response to Pall's discovery requests for information concerning Entegris' "redesigned" and allegedly non-infringing pre-wet filters, which redesigned filters also incorporated pleated filter technology. It is this incidental production of Entegris' pleated filter documents that forms the basis of the current dispute.

Entegris argues that Hartmann's involvement in the Cuno reexamination may prejudice Entegris. Simply put, Entegris claims that by virtue of requested discovery in this lawsuit, Hartmann has access to Entegris' pleated filter trade secrets, which secrets should not and must not be conveyed to those LVM attorneys serving as patent counsel. The danger according to Entegris, is that Pall's patent counsel, armed with Entegris' trade secrets, will be in a position to file new patents or expand existing Pall patents based on Entegris' efforts, or may use such information to unfairly further its various litigation efforts against Entegris.

For these reasons, Entegris seeks to enforce the Protective Order between Pall and Entegris. Section 10(a) of that Order contains a "prosecution bar," prohibiting litigation counsel from participating in the "prosecution of patent applications," and reads, in part, as follows:

> 10. Protected Information designated as HIGHLY CONFIDENTIAL may be disclosed only to the following persons:
>
> (a) A party's outside attorneys of record in this litigation, but not any individual who is involved in patent prosecution matters (domestic or foreign) on behalf of said party. Any outside attorney who reads and/or reviews HIGHLY

3

CONFIDENTIAL information shall not become involved or otherwise participate in the prosecution of patent applications that relate in any way to the subject matter of the HIGHLY CONFIDENTIAL information on behalf of said party for a period of three (3) years following the final resolution of this litigation ...

On May 5, 2008, Pall filed a motion seeking clarification of the prosecution bar. Oral argument was heard before Judge Wall on May 23, 2008. Based upon the parties' written submissions and oral argument, Judge Wall granted Pall's motion for clarification and agreed with Pall's position that "patent prosecution" as described in the Protective Order did not extend to reexamination proceedings commenced subsequent to the application for and issuance of the patent. Further, Judge Wall stated, "I don't see the need to prevent Mr. Hartmann from participating in the reexamination process. I don't think it has an impact on this litigation."

On June 23, 2008 Judge Wall adopted Pall's proposed order clarifying Hartmann's right to participate in the Cuno reexamination proceedings, which proposed order stated, "... the terms 'patent prosecution matters' and 'prosecution of patent applications' in ... the Protective Order do not encompass post-grant proceedings in the United States Patent and Trademark Office." (Docket entry 132-2).

On June 9, 2008, Entegris filed its objections to Judge Wall's order. Following substantial briefing on the issue, a hearing was held before this Court on September 19, 2008. Despite indications at the hearing that a compromise might be reached further negotiations between Pall and Entegris have failed to resolve the Protective Order dispute.

Pall has rejected Entegris' September 23, 2008 proposal, which proposal would have permitted Hartmann to participate in the reexamination, provided that he not review any Entegris documents produced from Entegris' Quality Documentation System (the "QDS" documents)

during the pendency of the re-examination.[2] Entegris argues that the approximately 2,500 QDS documents produced comprise only five (5) percent of the total document production in this case, and, as Pall admits, relate principally to Entegris' pleated filter technology, not to the patents in-suit, which concern pre-wet filter products. As such, Entegris argues that its proposal would permit Mr. Hartmann to participate in the reexamination with minimal burden while protecting Entegris against potential prejudice.

In rejecting Entegris' proposal, Pall now seeks to enforce the revised Protective Order adopted by Judge Wall, permitting Pall's outside counsel to participate in the reexamination without conditions. Entegris renews its objections that Judge Wall's adoption and enforcement of that revised Protective Order is clearly erroneous or contrary to law.

## DISCUSSION

### I.

### Standard of Review

As relevant here, discovery matters, including issuance and application of protective orders, are non-dispositive decisions governed by Federal Rule of Civil Procedure 72(a) and the Federal Magistrate Act, 28 U.S.C. § 636(b)(1)(A). Weiss v. La Suisse, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001). Given magistrate judges' broad discretion to resolve nondispositive issues, see In re Comverse Tech., Inc. Derivative Litig., No. 06-CV-1849, 2006 WL 3511375, at *2-3 (E.D.N.Y. Dec. 6, 2006), this Court may overrule such decision only where it is clearly

---

[2] At the September 25, 2008 hearing, Hartmann acknowledged that purposefully, and as a result of this pending Protective Order dispute, he has not viewed any of Entegris' QDS documents. See Entegris' October 3, 2008 letter. Courts have noted that reexamination proceedings take an average of 21 months. Silicon Graphics, Inc. v. ATI Tech., Inc., No. 06-C-611-C, 2007 WL 5433478, at *1 (W.D. Wis. Aug. 8, 2007) (citing Plastics Corp. v. Advanced Flexible Composites, Inc., 436 F. Supp. 2d 252 (D. Mass. 2006). In its October 3, 2008 letter, Entegris claims: "The next two phases of the present litigation are claim construction and expert discovery related to damages. Thus, for the foreseeable future (likely up to an entire year), Mr. Hartmann would have no need to review any of Entegris' Quality Documentation System documents. It is certainly possible that his litigation and/or the reexamination will be over by that time, rendering this entire dispute moot."

erroneous or contrary to law. Rubin v. Valicenti Advisory Servs., 471 F.Supp.2d 329, 333 (W.D.N.Y. 2007) (magistrate decisions on non-dispositive issues are subject to limited and deferential review under Rule 72(a), not de novo review as required for recommendations on dispositive motions under Rule 72(b)).

"Under the clearly erroneous standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently. Rather, the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (internal citations omitted). Meanwhile, "[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Equal Employment Opportunities Comm'n v. First Wireless Group, Inc., 225 F.R.D. 404, 405 (E.D.N.Y. 2004). However, a magistrate judge's decision is contrary to law only where it runs counter to controlling authority. See Manufacturing Administration and Management Sys., Inc. v. ICT Group, Inc., 212 F.R.D. 110, 119 (E.D.N.Y. 2002). Consequently, "[a] magistrate judge's order simply cannot be contrary to law when the law itself is unsettled." Id.

## II.

### Objections to the May 23rd Order

It is an open question whether the prosecution bar in the Protective Order applied to PTO reexaminations. For the reasons below, this Court finds that Judge Wall properly exercised his inherent authority to define the limits of discovery, that he did so in keeping with the spirit and intent of the Protective Order, and that his resolution of the issue was neither clearly erroneous nor contrary to law.

Entegris erroneously argues that a prohibition on the "prosecution of patent applications" and "prosecution related matters" contemplates and precludes litigation counsel's involvement in USPTO reexamination proceedings as a matter of law (citing Grayzel v. St. Jude Med., Inc., 162 F. App'x 954, 957-58, 966 (Fed. Cir. 2005); Visto Corp. v. Seven Networks, Inc., No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006); Microunity Sys. Eng'g, Inc. v. Dell, Inc., No. 2:04-CV-120-TJW, 2005 WL 2299455 (E.D. Tex. Aug. 1, 2005)). This Court cannot adopt so sweeping a statement, and is not persuaded that Judge Wall's reading of the prosecution bar is improperly narrow, that his interpretation abrogates or modifies the scope of the parties' negotiated protections without good cause, or that Entegris has been denied the benefit of its bargain.

Patent reexaminations, as the name suggests, are invoked to challenge a PTO patent grant. As Judge Wall properly noted, they are exclusively a "post-grant" procedure, distinguishable from prosecution efforts on an initial patent application. Although patent claims may be amended, redrafted or substituted for new albeit narrower claims, unlike prosecution of an initial patent application, the Patent Act, 35 U.S.C. §§ 305, 314, expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent. See Hoffman v. Wisner Classic Mfg. Co., 927 F. Supp. 67, 73 (E.D.N.Y. 1996) ("An important limitation on reexamination is that no proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding. Thus, claims added or amended in a reexamination proceeding will necessarily be narrower because section 305 bars claims that enlarge the scope of original claims. Therefore, no device can infringe the narrower claims emerging from reexamination that would not have infringed the original claims as well.") (citations omitted). This restriction both underscores the distinction between initial

patent prosecution and reexamination, and effectively mitigates the potential to misuse PTO procedures to gain a collateral business or litigation advantage, thereby rendering a prosecution bar in the reexamination context largely unnecessary. As Judge Wall concluded, the reexamination has no bearing on the instant litigation, and this Court agrees.

While recognizing that the ability to "tinker" with an existing patent can, in certain circumstances, adversely impact ongoing litigation (see, e.g., Grayzel, 162 Fed. Appx. at 964-65),[3] in negotiating protective orders it appears that litigants increasingly protect themselves against such risk by either expressly baring reexamination participation or expressly defining "patent prosecution" to include post-issuance reexamination. Compare, Hochstein v. Microsoft Corp., No. 04-CV-73071, 2008 WL 4387594, at *1 (E.D. Mich. Sept. 24, 2008) (the parties protective order stated in relevant part, "... prohibited patent prosecution shall include without limitation ... reexamination.") (emphasis supplied). Where sophisticated parties, as is Entegris, conscientiously negotiate to protect themselves, such explicit protections do not amount to contractual surplussage or over-cautious behavior, but reflect a distinction between prior-issuance and post-issuance proceedings and the potential impact of each on ongoing litigation.

Having failed to negotiate such an express protection, Entegris seeks to impose one by judicial means. Entegris has it backward: absent an express reexamination prohibition, Entegris – not Pall – must establish a compelling need to expand the Protective Order. To dodge that burden, Entegris' cites several cases in which generic prosecution bars, as here, have been extended to preclude reexamination participation. Specifically, Entegris cites two non-binding, unpublished Eastern District of Texas decisions (see, Visto Corp. v. Seven Networks, Inc., supra;

---

[3] Reexamination "... provides a mechanism by which patent owners can amend claims to avoid prior art. Litigation does not generally provide such a mechanism. Therefore, a claim that might be considered invalid during litigation could be amended during reexamination to produce a "valid" claim. Such an amendment may result in the reduction, or complete alleviation, of damages, but an injunction for present and future activities would still be an available remedy." Steven E. Lipman, Patent Reexamination Fundamentals, Practicing Law Institute (2007).

8

Microunity Sys. Eng'g, Inc. v. Dell, Inc., supra), and a solitary Federal Circuit opinion expressly designated as non-citable and non-precedential pursuant to Federal Circuit Rule 47.6 (see, Grayzel v. St. Jude Med. Inc., supra). Entegris argues that in declining to extend the prosecution bar, Judge Wall acted contrary to the above cited law and that his May 23rd Order should therefore be vacated pursuant to Rule 72's "contrary to law" standard. As a threshold matter, none of Entegris' cited cases constitute controlling authority – a fact fatal to its "contrary to law" objection. See Mfg. Admin. and Mang. Sys., 212 F.R.D. at 119 (recognizing that courts need not defer to determinations of sister courts, and that "[a] Magistrate Judge's order simply cannot be contrary to law when the law itself is unsettled); Norton v. Town of Islip, No. 04-CV-3079(NGG)(WDW), 2006 WL 2465031, at *7 (E.D.N.Y. Aug. 23, 2006) (affirming Judge Wall's decision to disqualify attorneys and finding Judge Wall's decision was not contrary to law even in light of potentially contrary but non-binding determinations by sister courts); Pkfinanas Intern. Corp. v. IBJ Schroder Leasing Corp., Nos. 93 Civ. 5375 (SAS), 96 Civ. 1816 (SAS), 1996 WL 675772, at *2 (S.D.N.Y. Nov. 21, 1996). Even if these cases represented binding precedent – which they do not – none support a universal proposition that patent reexamination is tantamount to the prosecution of a patent application. To the contrary, they exemplify Federal Circuit law that prosecution bars are not all alike and must be construed on a case-by-case basis. See, e.g., Matsushita Elec. Indus. Co., Ltd. v. United States, 929 F.2d 1577, 1579 (Fed. Cir. 1991); U.S. Steel Corp. v. United States, 730 F.2d 1465, 1567 (Fed. Cir. 1984).

In Grayzel, for example, extension of the prosecution bar was warranted where the plaintiff patent-owner affirmatively placed his patents into reexamination, thereby attempting to re-craft them based upon his review of defendant's confidential litigation discovery. Plaintiff thus intended to misuse both the reexamination proceeding and the discovery process to gain a

tactical advantage over the infringement defendant. The Court found that plaintiff's side-door maneuvering violated the general spirit and intent of the protective order. Contrary to Entegris' characterization of that holding, however, the Grayzel Court found it unnecessary to address the scope of the prosecution bar as a legal matter, but relied instead upon more general provisions in the Protective Order to vindicate a general intent to bar misuse of the discovery process.[4]

Unlike Grayzel, Pall's intention to participate in reexamination here is not a side-door litigation strategy. Here, Pall's involvement is purely defensive. Far from the risks presented in Grayzel, the likelihood that participation in the reexamination may, even inadvertently, prejudice Entegris' litigation position is lessened if not eliminated by the following: (1) the reexamination here does not involve Entegris, but was initiated by Cuno, a third-party unrelated to the present Entegris dispute, and (2) the subject of that reexamination – namely pleated filters, is substantially unrelated to the pre-wet filter technology at issue in the instant litigation. This complete lack of identity between either the litigants or the subject matter distinguishes Entegris' reliance on Microunity and Visto, both of which, like Grayzel, involved PTO reexaminations between the same litigants and directly concerned the patents in-suit. In each of those cases, expansion of the relevant protective order was essential to prevent a potentially adverse impact upon the outcome of then-pending litigation[5] – a situation not presented here.

Even assuming, however, that reexaminations fall within the scope of the prosecution bar, Pall has adequately established a compelling need for its litigation counsel to participate in

---

[4] Like the Federal Circuit in Grayzel, other federal courts have declined to reach this still open and unsettled issue. See, e.g., Silicon Graphics Inc. v. ATI Tech., Inc., No. 06-C-611-C, 2007 WL 5433478, at *3 (W.D. Wis. Aug. 8, 2007) ("[Defendant's] litigation team insists that the filing of a request for reexamination by an alleged infringer does not constitute "patent prosecution activities" and is not prohibited by the patent prosecution bar, a contention with which [plaintiff] vehemently disagrees. However, it is unnecessary to resolve that question ....").

[5] It is well recognized that "[w]here related patents are being prosecuted and litigated simultaneously, a party may obtain strategic advantage by using information from the litigation in the patent prosecution." Northbrook Digital LLC v. Vendio Services, Inc., No. 07-2250, 2008 WL 2390740, at *15 (D. Minn. April 4, 2008) (citing Mercexchange, L.L.C. v. eBay, Inc., 467 F.Supp.2d 608, 624-25 (E.D.Va. 2006)).

that proceeding and good cause for modifying the Protective Order. See Hochstein, 2008 WL 4387594 at *2 (recognizing the court's authority to modify protective orders upon a showing of good cause). Accordingly, even if Judge Wall indeed exercised his inherent discretion to abrogate and modify that Order, his decision to do so is not clearly erroneous in light of the facts and circumstances of this case.

After reviewing the record, and balancing the potential hardships, this Court agrees that Pall has shown good cause for modification of the Protective Order. Even assuming that Pall's litigation counsel has reviewed Entegris' confidential information – a highly disputed point – there is little risk from the potential to misuse that information either with respect to the filing of new patent applications or within the reexamination procedure itself.

First, Pall readily acknowledges that it is not seeking patents related to the disputed pleated filter technology, that that family of patents is closed, and that Pall is precluded from filing "any continuation patent applications that incorporate or cover any allegedly confidential Entegris information relating to its pleated filter [technology]." Plf's Opp. 7; see Medimmune Inc. v. Centocor, Inc., 271 F. Supp. 2d 762, 775 (D. Md. 2003) (declining to adopt an expansive prosecution bar where there "was no showing that patent counsel counsel was currently prosecuting patents on the exact same subject matter of the litigation.") Second, Pall argues that Entegris' purportedly confidential information would largely be irrelevant to a prior art challenge. See Hochstein, 2008 WL 4387594 at * 2 (finding defendant's confidential information irrelevant where, as here, the reexamination implicated only matters in the public record, i.e., the subject patent and the prior art); MercExchange v. Ebay, 500 F. Supp. 2d 556, 589 (E.D. Va. 2007) (same). Third, amendments to Pall's patent claims, if necessary, will necessarily result in narrower patent coverage, a fact that only benefits Entegris as an

infringement defendant. See Hoffman, 927 F. Supp. at 73. Finally, Pall argues that prohibiting its litigation counsel from participating in the reexamination defense would be highly prejudicial to its position both in the ongoing Cuno litigation and in this action. This Court finds persuasive Pall's arguments in favor of participating in the reexamination, and finds that to bar such participation would also result in substantial prejudice to Pall.

Pall and Cuno first engaged in litigation in this district as far back as 1997 – a history of constant legal wrangling fast-approaching Dickensian proportions. With respect to pleated filter technology specifically, Pall and Cuno have been embroiled in litigation since at least 2003. In all that time, Pall's litigation counsel, and Mr. Hartmann in particular, have been intimately involved, waging ambidextrous war in the courts, the PTO and back again. Indeed, Pall's counsel describes Cuno's October 2007 request for PTO reexamination of Pall's pleated filter patents as an attempt to undue, by administrative means, judicial rulings favorable to Pall. Under these circumstances, Entegris' broad reading of the Protective Order would unjustifiably place Pall's litigation counsel on the "horns of a dilemma," forcing them to choose between continuing to prosecute Entegris for alleged infringement or withdrawing from this litigation to provide a more complete defense against Cuno's PTO challenges. Other than gaining leverage, and an obvious tactical advantage over Pall in this litigation, Entegris has failed to establish any real need for forcing such a Hobson's choice. As such, to remove Mr. Hartmann from that fight at this late date, based solely on an over-inclusive reading of a Protective Order entered into with Entegris, a party wholly unrelated to the Cuno dispute, over an equally unrelated subject matter, would be detrimental, prejudicial and a result neither contemplated nor supported by the plain language of the Protective Order.

While Pall has amply demonstrated manifest prejudice, Entegris' own claim of prejudice is speculative. While the Court does not deny that Entegris may indeed have a secrecy interest, it is notable that Entegris has twice failed adequately to articulate that interest. Indeed, despite ample opportunity prior to the May 23rd hearing before Judge Wall, Entegris did not at that time identify specific confidential information at risk for disclosure, nor did Entegris identify the specific manner in which that information might be used to Entegris' detriment. See Hochstein, 2008 WL 4387594 at *3 (denying objections to reexamination participation where "[d]efendant was unable to specify what confidential information was at risk of disclosure, or the manner in which [plaintiffs] litigation counsel may use such information during the reexamination.") Having failed to support their position before Judge Wall, Entegris comes to this Court with newly expanded arguments and citing, for the first time, a host of allegedly confidential material all of which was easily identifiable prior to the May 23rd hearing. Even now, it took until after this Court's September 19, 2008 hearing on the matter before Entegris properly identified confidential information to be protected. Thus, only on September 23, 2008, and in light of Pall's objections that Entegris' had improperly designated copious public documents, did Entegris ultimately limited its claim to some 2,500 pages, or roughly 5 percent of its discovery production.

This Court is not impressed with Entegris' eleventh-hour attempt to finally add flesh to the bones of its objection, a circumstance Pall rightly challenges as creating undue surprise and denying it a fair opportunity to respond. Nonetheless, neither Entegris' new arguments nor its supplemental identification of allegedly sensitive material render its prejudice claims any more compelling, and are not enough to preclude Pall's litigation counsel from participating in the reexamination, particularly when balanced against the immediate prejudice to Pall should its

13

litigation counsel be precluded from defending against Cuno's reexamination strategy. For these reasons, Entegris' objections are dismissed and Judge Wall's Order clarifying the right of Pall's litigation counsel to participate in the Cuno reexamination is affirmed.

## CONCLUSION

For the reasons above, I find that Magistrate Judge Wall's Order of May 23, 2008, clarifying the September 15, 2006 Protective Order is neither clearly erroneous nor contrary to law. Accordingly, Entegris' objections are DISMISSED. Further, Pall's motion to strike portions of Entegris' submissions is DENIED as moot.

SO ORDERED.

Dated: Brooklyn, New York
November 26, 2008

s/ RRM
ROSLYNN R. MAUSKOPF
United States District Judge